## Eastern Kentucky Mineral and Timber Company v. Swann-Day Lumber Company.

(Decided April 30, 1912.)

### Appeal from Fayette Circuit Court.

1. Mineral and Timber Contracts—Implied Condition.—Where a grantor conveys his interest in the minerals and timber on a large body of land, and the only consideration he is to receive is a per cent. of the net profits derived from the property conveyed when it is manufactured and sold by the grantee, the law will imply an agreement upon the part of the grantee to begin the development of the property within a reasonable time although there is no condition of this kind in the contract.

2. Mineral and Timber Contracts—Construction of.—A writing, although it may purport to convey the fee in timber and minerals, will be treated as a lease obliging the grantee to begin opera-tions within a reasonable time, if the condition of the parties and the circumstances surrounding the execution of the paper make it necessary that this should be done to protect the rights of the grantor and it appears that this was the intention of the parties.

3. Mineral and Timber Contracts—Abandonment.—Where a con-tract for the sale of timber and mineral interests imposes upon

the grantee the duty of developing the estate conveyed within a reasonable time, the failure of the grantee to begin operations within a reasonable time may be treated by the grantor as an abandonment of the estate on the part of the grantee, and the grantor may peaceably enter and take possession.

4. Mineral and Timber Contracts—Remedies of Grantor.—Where the grantee fails to perform the conditions of the contract, the grantor may bring a suit for specific performance or a cancellation of the contract, but these remedies do not preclude him from treating the contract as abandoned by the grantee and peaceably taking possession of the premises.

5. Contracts—Reasonable Time for Performance of Conditions, What is.—A reasonable time for the performance of conditions in a contract is a question of fact to be determined by all the circumstances of the case. No fixed rule can be laid down.

6. Contracts—Consideration Entitled to Weight in Construction of.— In determining whether a paper was intended by the parties to be a conveyance in fee or only a lease under which the grantee must begin operations within a reasonable time, there is no feature entitled to more weight than the one relating to the consideration and the manner of its payment. When the consideration has been fully satisfied, and the grantor has parted with his title, the construction that the fee has been conveyed will prevail; but if the consideration is only a per cent. of the profits to be realized from the development of the estate conveyed, the court in an effort to do justice will construe the contract as a lease.

7. Contracts—Construction of.—In the interpretation of contracts, it is admisible to look into the situation and condition of the parties and the circumstances surrounding them at the time the instrument was executed, as an aid in arriving at its proper construction.

H. CLAY HOWARD, WM. O. BRADLEY, JOHN T. SHELBY, ROBT. H. WINN and JOS. C. LYKINS for appellant.

A. F. BYRD and JOUETT & JOUETT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In July, 1874, John D. Spencer and his wife signed and acknowledged the following paper—which for convenience we will call a deed—and it was duly recorded in the clerk's office of Wolfe County:

"Know All Men by These Presents:

"That John D. Spencer, of the County of Wolfe, and State of Kentucky, and Rebecca Spencer, wife of John D. Spencer, for and in consideration of one dollar, and other considerations hereinafter mentioned, to be paid by Henry C. Howard, W. E. McKinney, A. L. Greer and

John W. Greer, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey to the said Howard, McKinney, Greer and Greer, their heirs and assigns forever, the undivided seven-eighths (7-8) of the minerals and timber, with the right of way to timber and minerals when the same are being mined and worked. Said tract of land is bounded and described as follows, to-wit:

"* * * The grantor reserves one-eighth interest in the mineral and timber of said land, outside of the seven-eighths conveyed, and is to share with grantees, as above mentioned. That is to say, the grantor is to receive one-eighth of the net profits of all minerals and timber taken from said tract, so soon as mining operations commence, said grantor also reserving of the timber herein conveyed, a sufficient quantity for mill, fuel, and fencing, for his own use on his farm. This deed is not to embrace, or intended to convey, anything but the minerals and timber as stated, and not to interfere with the farming interest of said territory, only so far as is necessary to work and mine minerals, and getting out timber."

By regular conveyances, whatever right, title and interest the grantees had under this deed came into the ownership of the appellant company. John D. Spencer died in 1883, and in 1887-8 his children and heirs at law conveyed a fee-simple title to all the land embraced in the boundary mentioned in the above instrument to remote vendors of the appellee company, and by regular conveyances the estate so conveyed came into the possession of appellee.

About 1902, the appellee commenced to cut and remove timber from the land, and in 1904 this action was brought by the appellant for an accounting and to recover from appellee the value of the timber so cut and appropriated. The master commissioner to whom the case was referred reported that the appellant was entitled to recover $4,852, as the value of seven-eighths of the timber cut and appropriated by appellee. Afterwards, upon considering the case on exceptions to the commissioner's report, the lower court entered a judgment dismissing the petition, and as a result this appeal is prosecuted.

A number of reasons are advanced by counsel for the contesting parties in support of and in opposition to the judgment of the lower court; but, we have reached the

conclusion that the controlling decisive question in the case is whether the deed executed by Spencer should be treated as contended by counsel for appellant as conveying to the grantees therein an unconditional fee-simple interest in the timber and minerals, or, as insisted by counsel for appellee as only conveying to the grantees the right to the timber and minerals upon the condition that they commence within a reasonable time to convert it into saleable or manufactured products. If the deed conveyed the fee absolutely, the appellant should succeed; but if it only granted the fee with the condition annexed that the grantees should begin operations within a reasonable time, the judgment below was correct.

Having this view of the question of law that controls the case, it is important at the outset to get a clear understanding of the facts, not only in their relation to the parties at the time the contract was executed, but subsequently, as these facts will furnish valuable aid in getting at the intention of the parties and assist materially in the proper construction of the deed. And it is a well settled principle in the law of contracts that when the instrument in question is fairly susceptible of more than one construction, it is admissible to have the aid of all pertinent extrinsic facts and circumstances that will throw light on the intention of the parties in its executtion and enable the court to carry out their purpose as expressed in the writing. As was said in Lexington & Big Sandy Ry. Co. v. Moore, 140 Ky., 514:

"In the construction of all contracts, the intention of the parties making the contract, if it can be arrived at from a consideration of the instrument, must control, and in aid of what the parties intended it is admissible in the construction of many contracts that are on their face free from ambiguity to consider their situation and the circumstances and conditions surrounding them at the time the contract was entered into—not for the purpose of modifying or enlarging or curtailing its terms, but to shed light upon the intention of the parties. And the intention of the parties thus gathered will prevail unless it does violence to the meaning of the contract as written. Page on Contracts, section 1123; Kauffman v. Reader, 108 Fed. Rep., 171, 54 L. R. A., 247; Smith v. Kerr, 108 N. Y., 31, 2 Am. St. Rep., 362; Hildreth v. Forrest, 4 J. J. Mar., 217. In other words, if a written contract, when viewed from the standpoint of the parties

at the time it was executed can be made to carry out their intention as expressed in the writing, the court will adopt the construction that will accomplish this end.''

Fortunately there is little dispute about the material facts. The land described in the deed was at the time of its execution practically all wild, uncultivated, unenclosed mountain land. The nearest railroad was some forty miles away, and there were no navigable streams convenient that would lend any assistance in the transportation of timber or minerals that might be obtained. The mountainous condition of the surrounding country, the great distance from railroad facilities, and the lack of water means of transportation, produced a present condition that made the timber and minerals on the land of little or no value for commercial purposes, or indeed for any purpose. There was no local demand for timber or minerals, and in the absence of transportation facilities no incentive to attempt to put these products on the market. Spencer, the grantor, was a man of intelligence and good business capacity, and although he lived some nine years after the instrument was executed, it does not appear that he made any complaint of the failure of the grantees to begin the development of the natural resources that they had purchased. At the time the writing was executed, there were strong indications that a railroad would be constructed through or in the immediate vicinity of the land. A route was then being surveyed, and the grantees who were interested in building the road doubtless believed, as did Spencer, that it would only be a short time until a railroad would be in operation to this body of land. But, for reasons not necessary to notice, the contemplated railroad was abandoned, and it was not until some sixteen years afterwards, or about 1890, that a railroad was built by other parties on the route that was being surveyed in 1874, and then for the first time the timber and minerals, particularly the timber, became valuable. For the reasons suggested, during the sixteen years, from 1874 to 1890, no steps whatever of any kind or character were taken by appellant or its vendors to sell or manufacture any timber from the land or develop its mineral resources. It is a further admitted fact that although the railroad was opened in 1890, neither the appellant nor any of its predecessors in title made any effort to take possession of the property that it claims was granted by the instrument, or to do anything towards converting into

money the timber and minerals conveyed.   Indeed, not until 1904, when this suit was brought, thirty years after the deed was executed, did the appellant or any of its vendors take any action in relation to the property or exercise any acts of ownership whatever over the property, or pay any taxes on it, or take any steps towards asserting right, title or interest in it.   The delay in failing to take any action before 1890 is excused upon the ground that as no railroad was built until then, nothing could have been done towards the development of the property, and as it remained undisturbed, there was no occasion for assertion of interest or title upon its part. The inaction after 1890 is attempted to be justified upon the theory that in 1887-8 the Spencer heirs sold the property, and so there was no reason for asserting ownership until some overt act of trespass was committed; and, it is said that the appellee did not commence to appropriate the timber until 1902, and that within a reasonable time thereafter this action was brought to assert its rights.   It is not controverted that the predecessors in title of the appellee company, and the purchasers from the children and heirs of John D. Spencer in 1887-8, knew of the existence of the writing he had executed in 1874.   It had been put to record, and whether the purchasers from the Spencer heirs or their vendees had actual notice of it or not, they were charged with the constructive notice arising from the fact that it was of record, and so there is no claim on the part of the appellee that it was a purchaser without notice of the previous sale by Spencer.   With this statement of the facts, let us now see whether the deed should be treated as vesting in the grantees of John D. Spencer an absolute or only a conditional title.

It will be noticed that Spencer conveyed to the grantees seven-eighths of the mineral and timber on the land, reserving to himself one-eighth, and, that the only consideration Spencer was to receive for the conveyance of this large estate was one-eighth of the net profits of all minerals and timber taken by the grantees from the land.   It is true there is a consideration of one dollar, acknowledged by Spencer, but this is a mere nominal consideration and entitled to no weight in determining the amount of the consideration that it was contemplated by the parties should be paid by the grantees for the valuable interests granted.   The real and indeed only consideration was the obligation upon the part of

the grantees to give to Spencer one-eighth of the profits. This was the only material inducement that could have influenced Spencer to enter into the contract. While not doubting that the owner of land has a right to dispose of it or any severable interest therein as he pleases, and for what he pleases, and to take such consideration as he chooses to accept, whether it be great or small, or payable in cash or in installments or in royalties, it is nevertheless a matter of first importance in the construction of contracts like this to understand the real consideration to be paid for the property conveyed. In an attempt to ascertain whether a deed like this was intended by the parties to be conveyed in fee simple, or only a contract or lease under which the grantees must begin operations within a reasonable time, there is no feature entitled to more weight than the one relating to the consideration and the manner of its payment. There is and should be a marked difference between the construction and effect of a conveyance of timber and minerals, or indeed any interest in land, for a stipulated consideration, payable in cash or in secured notes or in some other valuable property, and the construction and effect of a conveyance in consideration of a royalty or per cent., to be paid out of the income derived by the grantees from the property conveyed. In other words, if Spencer for a recited consideration of one thousand dollars—assuming that to have been adequate—had conveyed to the grantees all the timber and minerals in the tract of land, he would have parted by this conveyance with all right, title and interest in the timber and minerals, and no delay in the development of the property on the part of the grantees would have conferred upon Spencer or any person claiming under him the right to forfeit the contract or to insist that it had been abandoned. Nor would any effort to convert such a conveyance into a license or lease be approved by the courts. Such a contract would be a fully executed instrument. Nothing would remain to be done by either of the parties. All the title and interest that Spencer had would have passed out of his control, and the grantees would have the right to do with the property as they pleased, or, as any other owner of the whole estate would have the right to do with it. When the consideration has been fully satisfied, and the grantor has parted with his estate, and transaction between the parties is a closed incident. The grantor has no further interest

or concern in the property conveyed. But, a very different situation is presented when the only consideration the grantor is to receive is a per cent. of the profits the grantee may realize from the development of the estate. Under such a contract the consideration is a continuing one, to be paid only by the labor of the grantee in the development of the property. The grantor has a' continuing interest in the estate conveyed, the transaction between the parties is not a closed incident and the grantee is not at liberty to do with the property as he pleases. He can not use or fail to use it to the prejudice of the grantor who has rights that must be respected.

Looking now at the instrument in question, in connection with the situation of the parties, the circumstances surrounding them at the time it was executed and the subsequent conduct of the grantees it is obvious that it was an implied condition of the contract that the grantees should within a reasonable time begin operations so that the grantor might receive some consideration for the estate he had parted with. To adopt the view of this contract insisted on by counsel for appellant would be to place it absolutely and without limitation in the power of the grantees to hold the property for an indefinite time or forever without paying to the grantor anything whatever for the privilege. In other words, the grantor would be placed in the attitude of having conveyed to the grantees all the timber and minerals on seven-eighths of a large body of land, without receiving any consideration until it might suit the convenience or interest of the grantees to undertake the development of the property, and this they might delay for ten, twenty, fifty or even one hundred years. In the meantime, pending this inaction, the grantor would be deprived of the right to use or control the property conveyed, or realize anything from it, as well as denied the right to dispose of it. We do not think any court should give to a contract like this such a construction as would place it in the power of the grantee, without any loss, outlay or disadvantage, to take, keep and hold indefinitely valuable property rights in the manner attempted in this case.

It is strongly insisted, however, that this deed conveyed the fee in the timber and minerals described, and as there is no stipulation in the instrument as to when the grantees should commence the development of the

property, and no condition reserving to the grantor the right to re-enter or enforce a forfeiture for inaction on the part of the grantees, however long it may continue, the grantor must be left without remedy or redress. It is true that the contract does not expressly or in terms impose any conditions upon the grantees, or mention when, if at all, the development of the property is to begin. But the court will not be hindered in its purpose to give to a contract like this a construction that will carry out the manifest intention of the parties by the mere omission of conditions that perhaps would have made plainer the purpose of its execution. We will read into the contract such terms and conditions as the contract and the circumstances surrounding its execution warrant us in assuming were in the minds of the parties when it was entered into. So interpreting it, we are well satisfied that it should be read as if there had been inserted in it, in apt terms, a condition imposing upon the grantees the duty of beginning within a reasonable time under pain of forfeiture or abandonment, the development of the estate granted. Nor is there anything novel to the law in this method of interpretation. The books are full of cases in which the courts, to prevent gross injustice, have gathered from the contract and the circumstances surrounding its execution the intention of the parties and construed it to carry out their purpose, although in so doing it was found necessary to supply omissions. In a note to Chauvenet v. Person, 217 Pa., 464, 11 L. R. A., n. s., 417, the editor in a review of the cases upon this subject states the result of his investigation as follows:

"Generally, all leases of land for the exploration and development of minerals are executed by the lessor in the hope and upon the condition, either express or implied, that the land shall be developed for minerals; and it would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold under it any considerable length of time without making any effort at all to develop it according to the express or implied purpose of the lease; and, in general, while equity abhors a forfeiture, yet, when such a forfeiture works equity, and is essential to public and private interests in the development of minerals in land, the landowner, as well as the public, will be protected from the laches of the lessee and the forfeiture of the

lease allowed, where such forfeiture does not contravene plain and ambiguous stipulations in the lease."

In Shennandoah Land & Coal Co. v. Heiss, 92 Va., 238, the court in a case very similar to this, said in substance that although there was no covenant in a mining lease on the part of the lessee to mine the minerals in the land thereby conveyed, yet where by the terms of the lease the only compensation the lessor received was a portion of the mineral mined, in order to give effect to the lease, it would be so construed that the acceptance of it by the lessee would constitute an agreement on his part to mine the minerals to be found in the property within a reasonable time, and if he failed to do this, equity would, at the instance of the lessor, cancel the agreement. To the same effect is Bay State Petroleum Co. v. Penn. Lubricating Co., 121 Ky., 637; Berry v. Frisbie, 120 Ky., 337; Breckinridge Asphalt Co. v. Richardson, 147 Ky., 834; Aye v. Philadelphia Co., 193 Pa. St., 451, 74 Am. St. Rep., 696; Page on Contracts, Vol. 2, Sec. 1123; Hawkins v. Pepper, 117 N. C., 407; Tennessee Oil, Gas & Mineral Co. v. Brown, 131 Fed. Rep., 696; Adams v. Ore Knob Copper Co., 7 Fed. Rep., 634.

In Snyder on Mines, Vol. 2, section 1136, the author states that in the construction of mining deeds and contracts "the intention of the parties is generally to govern where this can be gathered either from the instrument itself and the surrounding circumstances or from parol testimony admitted within the general rules." And it is further said that "the consideration is important as governing the intention of the parties."

Nor do we find anything in Hicks v. Phillips, 146 Ky., 305, in conflict with the view we have expressed. In that case, after a full review of the authorities, we held that where the grantor in a deed conveying land, reserving the timber on a specified part of the land, and there was nothing in the other stipulations of the contract or in the situation of the parties or the circumstances surrounding them at the time the contract was executed to show that a severance of the timber from the soil was contemplated, the title to all the timber then standing on the land specified remained in the grantor and was not lost or defeatd by his failure to cut and remove it within a reasonable time. The essential difference between that case and this is that there the grantor did not sell or convey the timber in question. Undoubtedly the

grantor of the fee has the right to sell so much of the estate as he pleases, and retain so much of it as he pleases; and it is no concern of the grantee what the grantor does with the estate that he has not conveyed. In such a state of case, the contract is fully executed by both parties. Nothing remains to be done by either. But, even where there is a reservation, such as existed in the Hicks case, there might be as we said in the opinion extrinsic facts and circumstances indicating that it was contemplated by the parties that the timber should be removed within a reasonable time, so that the grantee might get the full benefit of the land he had purchased.

Assuming, now, that the grantee in contracts like the one we are considering is to begin operations within a reasonable time, and that in the absence of any express condition to this effect such an agreement will be implied, the question of what is a reasonable time is not really involved in this case. It is obvious that a reasonable time in which operations should have commenced had expired many years before any action was taken by the appellant company, and that under a fair and just construction of the contract the grantee must be deemed to have abandoned its rights under the lease long before the institution of this action. When the grantee in a contract like this will be deemed to have abandoned his rights is generally a question of fact to be determined by the circumstances of each particular case. But if the reasonable time doctrine is to be applied in any case, it would be difficult to conceive of a case presenting stronger reasons than this one does for its application. We do not regard the conveyance by the Spencer heirs as a matter of any importance in determining the principles that must control this case. The case might well be treated as if John D. Spencer was yet living and in 1902 had cut and removed the timber, and this action had been brought against him. In this contest with the vendee of Spencer, the appellant occupies no better position than it would in a contest with Spencer himself; and the appellee holds the same place as Spencer would, if living, and he had done as it is claimed it did.

Of course if the grantees had taken the fee no question of abandonment could arise. The unconditional owner of the fee can not be divested of his estate merely by non-user. There is no such thing known to the law as non-user of the fee amounting to an abandonment in the sense that the owner will lose his estate. The owner

of the fee has the right to use or not use it as he pleases. He is not required to exercise any acts of physical ownership to hold or preserve his title. And if the grantees in the Spencer deed had acquired the unconditional fee, we would have no difficulty in sustaining the contention of the appellant.

It is further insisted that if the contract obliged the grantees to begin operations within a reasonable time, the remedy of the grantor upon their failure was a suit for damages or for specific performance or to forfeit the lease. We readily admit that the grantor in contracts like this has the option to resort to these remedies or any of them; but the fact that he does not resort to either, does not preclude him from relying upon an abandonment of the contract by the grantee. In other words, where non-user or inaction has worked an abandonment, the grantor may re-enter and take possession of the premises as if no conveyance had been executed. There is no sound reason why he may not peaceably obtain possession of his property without resorting to other remedies given by the law. He has the right to peaceably and quietly do that which the judgment of the court would give him the right to do. His entry does not prejudice the rights of the grantee; as, if it is wrongful, he may be successfully proceeded against as a trespasser.

We may with much propriety consider the sale of the property by the heirs of Spencer as an entry upon their part, indicating a purpose to take possession upon the theory that the grantees had abandoned whatever rights they acquired under the deed. The title and possession of the property upon the death of Spencer came into the possession of his heirs, and at the time it was sold by them the long non-action of the grantees in the Spencer deed had worked a forfeiture of any title or interest they may have had in the estate.

It is also suggested that as the railroad contemplated in 1874 was not built, the doctrine of reasonable time should not be applied, as under the admitted facts the property conveyed could not be developed. But if the belief that the road would be built was one of the moving causes that induced the execution of the contract, the fact that it was not built furnishes strong reason why the contract should be treated as abandoned. Manifestly the grantee in a case like this should not be allowed to postpone beyond a reasonable time the perform-

ance of implied conditions upon the ground that a prospective railroad had not been built. If a contrary rule was adopted, the grantor would be made the victim of conditions that he did not make and could not control and the grantee become the sole beneficiary of a situation that put it out of his power to perform the conditions that influenced the grantor in making the contract.

Upon a consideration of the whole case, we are of the opinion that the judgment should be affirmed, and it is so ordered.

Whole court except Judge Winn sitting.