**KROEGER v. MARTIN et al.**

No. 9795—Opinion Filed March 25, 1919.

Rehearing Denied May 27, 1919.

(180 Pac. 955.)

(Syllabus.)

**1. Oil and Gas—Contract—Construction.**

Record examined, and held, that the primary purpose of the contracts by which K. reserved for 15 years the oil and gas on the lands purchased by M. and K., was not the payment to them of royalties from oil and gas to be found thereon, but to adjust the respective rights of the parties in the land, and to enable M. and K. to obtain a merchantable title to the fee.

**2. Same—Lease—Development.**

Where, in order to enable a purchaser to acquire a merchantable title to real property, and to effect an adjustment with the holder of his rights and interest in an enforceable contract with the owners for an oil and gas lease thereon, and for the purchase of an interest in such real property, the purchaser enters into a written contract with such holder, in consideration of a release of the outstanding contract and of a quitclaim deed to the premises and other covenants and agreements then mutually entered into, whereby the holder of the original contract reserves the oil and gas appurtenant to the premises for a term of 15 years, with the privilege of entry and accompanying development rights, in the absence of special circumstances, no implied covenant exists requiring the lands to be explored and developed with reasonable diligence, as is commonly required in case of an ordinary oil and gas lease.

**3. Same—Reservation of Oil and Gas.**

One who holds an enforceable contract for an oil and gas lease and for an interest in land may contract in respect thereto, and may, in effecting a settlement of his rights, enter into a contract with the grantees of those with whom he formerly contracted, reserving to himself the oil and gas beneath the lands conveyed.

**4. Same.**

Where in such contract the party to the former contract reserves the oil and gas for a term of 15 years, the time when operations shall commence is a proper subject of agreement between the parties, and, in the absence of imposition, fraud, or mistake, the grantees will be held to their undertaking.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Suit by H. A. Kroeger against C. M. Martin and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

H. A. Kroeger, pro se.

Ledbetter, Stuart & Bell, for plaintiff in error.

King & Crawford and Johnson & McGill, for defendants in error.

SHARP, J. On the 16th day of March, 1907, Apple & Franklin, of Ardmore, entered into a written contract with the plaintiff in error, Kroeger, the pertinent provisions of which were as follows: Apple & Franklin were to obtain title, in their name, to 680 acres of land, designated by Kroeger, and situate in sections 25 and 36, township 5 north, range 6 east, and 30 and 31, township 5 north, range 7 east, and which title, when obtained, should remain in Apple & Franklin, and not in any manner be sold or incumbered, except as therein agreed, until the contract was fully and completely performed. When title was obtained, Apple & Franklin agreed to immediately execute and

deliver to Kroeger an oil and gas lease on 500 acres of the lands "for a period of 15 years, or so long thereafter as oil and gas is produced from the said premises." The royalties were fixed at one-tenth part of the oil and $100 per annum for each gas well, all of which it was covenanted "will more particularly appear in the lease to be executed, and the said lease, when executed, shall be deemed a part of this agreement." It was also provided that the balance of the lands not to be included in the oil and gas lease should remain free of all liens and incumbrances, and not be sold or transferred "until such time as both parties hereto shall agree, but the same shall be held for the benefit of the parties hereto." It was further agreed that the purchase price of the lands to be allotted and acquired by Apple & Franklin should be $4,000, and that, when that sum had been paid them out of the royalties and rents accruing from the lands described in the accompanying plats then they should execute and deliver to Kroeger, his heirs, executors, administrators and assigns, a good and sufficient warranty deed to an undivided one-half interest in the tracts of land acquired by them under the contract. Thereafter the rents and royalties should belong in equal parts to the contracting parties, after the payment of certain enumerated expenses.

The contract was duly acknowledged by the parties thereto, and placed of record in the office of the register of deeds of Pontotoc county, wherein the land was located, on January 4, 1908. Pursuant to the contract Apple & Franklin acquired title to the lands included in the Kroeger plats, but for some reason failed to execute to him an oil and gas lease thereon. Notwithstanding such failure, Kroeger made numerous efforts during the years 1909 and 1910, to procure the drilling and development of the premises for oil and gas. On the 30th day of April, 1912, defendants Martin and Knotts purchased from Apple & Franklin the lands included in Kroeger's contract. Martin was fully advised, prior to concluding his purchase of the lands, of the contract between Apple & Franklin and Kroeger, and considerable correspondence was exchanged, as well as telephone conversations had, in concluding an agreement whereby Kroeger would release certain of his rights and renew, on somewhat different terms, some of the rights and privileges included in the contract of March 16, 1907. In the negotiations of the parties, and their efforts to reach an understanding, Martin acted as the agent of his sister, Sadie

L. Knotts. Finally, and on the 14th day of June, 1912, a contract was made and entered into between Martin and Kroeger whereby, in consideration of the execution of a release by the latter of the contract of March 16, 1907, and of the modification thereof as desired by Martin, and the payment to him of $150 by Kroeger, and other unimportant considerations not necessary to mention, it was mutually agreed by the parties that there should be reserved to Kroeger all of the oil and gas in and under the 680.95 acres of land included in the original contract. The contract also contained an express grant by Martin of the oil and gas, and gave Kroeger the sole and exclusive right, privilege, and authority to drill and prospect for oil and gas on the premises for a period of 15 years from and after the date thereof, and so much longer thereafter as oil and gas was produced from the lands. It expressly stipulated that on all oil or gas produced on the lands after the 1st day of January, 1918, Kroeger should pay to Martin as royalty one-tenth part thereof, and the further sum of $100 per annum on the production of each well producing only gas, where such gas was used or sold off the premises by Kroeger. It also provided that Martin should execute to Kroeger a deed conveying a fee-simple title to a particular 90 acres of the land included in Martin's purchase. The contract was duly acknowledged by the parties, and placed of record in the office of the register of deeds of Pontotoc county on the 18th day of January, 1913.

On the 4th day of April, 1913, the parties made and entered into a new contract in writing covering the subject-matter of the previous contract, by which it was agreed "that, for and in consideration of the execution of a quitclaim deed" by Kroeger, thereby releasing of record his contract of March 16, 1907, with Apple & Franklin, and in consideration of the modification of the contract between Martin and Kroeger of June 14, 1912, and a reconveyance to Martin of 60 acres of land therein described, there was thereby reserved to Kroeger all of the oil and gas in or under, or which might be produced from, the tracts of land therein described for a period of 15 years from and after the date thereof, and so much longer thereafter as oil or gas was produced from the premises. As in the previous agreement between Martin and Kroeger, the latter contract, after undertaking to reserve to Kroeger the oil and gas, also contained a grant thereof from Martin, together with a provision giving Kroeger the exclusive right, priv-

ilege, and authority to drill, prospect for, and produce oil and gas on the premises. This contract provided for the payment of a 5 per cent. royalty on all oil produced on the lands and a further payment of $50 per annum from wells producing only gas, when such gas was used or sold off the premises by Kroeger. Numerous other provisions, not necessary to a determination of the case, are contained in the contract. This contract was placed of record in the office of the register of deeds of Pontotoc county on the 25th day of February, 1914..

On the 17th day of September, 1915. C. M. Martin and Sadie L. Knotts entered into an oil and gas lease with the defendant in error Walter H. Gant covering 740 acres of land, being the premises included in the latter contract of the lessors with Kroeger. It is this lease and the claims asserted under it that gave rise to the present suit brought by Kroeger to establish and determine the rights claimed by him under his contract, and for a cancellation of the oil and gas lease to Gant, and to enjoin Martin, Knotts, and Gant from interfering with the possession given him under the contract of April 4, 1913.

The answer of the defendants Martin and Knotts, among other things, charged fraud, in the making of the contract of June 14. 1912; ignorance of the contract of March 16, 1907, which contract, it was alleged, was contrary to public policy and void; that at the time of the purchase Kroeger was their confidential friend and legal adviser, and that the contract of June 14, 1912, was executed at his instance and without consideration; that the contract was unconscionable in its terms, was unilateral, and hence void; and that, on account of a failure to develop the lands for oil and gas, "the contracts were void for want of consideration, and against public policy." Defendants asked judgment for damages, and for the cancellation of "the leases, contracts, and deeds" hereinbefore referred to. At the close of defendants' testimony, the court sustained plaintiff's demurrer to defendants' claim of fraud, duress, and undue influence. While a witness in his own behalf, the defendant Martin admitted that Kroeger had not been his attorney, and hence the defense based on the unsupported claim of an abuse of confidential relations need not be considered. In his findings of fact the court announced that the evidence did not show that Kroeger "was guilty of any fraud," that he had been diligent in his efforts to have the property in question developed for oil and gas, but

had failed in procuring its development, and that the contract of April 4, 1913, was made for a valuable consideration by parties capable of entering into contracts. In conclusion the court announced that it "reluctantly followed the Brown-Wilson Case," and accordingly denied plaintiff relief.

The case is not one governed by the general rule of law controlling the rights of the parties to an ordinary oil and gas lease, made by the owner of lands to one who has no interest therein, other than such as is acquired by the lease, and the very purpose of which is the early development of the premises for oil and gas. On the other hand, the case presents a situation in which one of the parties to a contract and the successors in interest of the other undertake to define their respective interests, both in the fee and in the right to prospect and drill for oil in lands, which, under an original binding and enforceable contract, upon the performance of certain conditions and the payment of a stipulated sum of money, the parties thereto were to become joint owners thereof. Prior to the contract of June 14, 1912, there had been no release of the Apple & Franklin contract under which, in the event of the discovery of oil or gas on the premises, and upon full performance of its terms and requirements, Kroeger could have acquired the equitable title to an undivided one-half interest to the lands described therein, and of the right to a deed passing to him the legal title. Bartlesville Oil & Imp. Co. v. Hill 30 Okla. 829, 121 Pac. 208; Tiffany on Real Property, p. 265. In Apple & Franklin's contract no time was fixed within which operations for the exploring and drilling of the lands for oil and gas should begin, though the duration of the lease to be executed was fixed at 15 years. It is not shown that Apple & Franklin even attempted to declare a forfeiture of the contract (had they been in a position to do so), or that Kroeger had abandoned any rights accruing to him under the contract. Such was the situation when Martin commenced negotiations for the purchase of the lands, and which resulted in the contracts of June 14, 1912, and April 4, 1913. By these contracts Kroeger's rights were made the basis for, and formed the consideration of, the contracts with Martin and Knotts. Martin throughout his dealings recognized Kroeger's interests. This appears from Martin's own testimony and the correspondence of the parties. The purpose, or at least the primary purpose, of the contract between Martin and his sister and Kroeger was to release of record the

Apple & Franklin contract, through which, upon the performance of its terms, Kroeger was to obtain a one-half interest in and to the fee. After the making of certain concessions on the part of Martin, in the way of deeding a small portion of the lands to Kroeger, and the payment to the latter of $325, Kroeger executed the 1913 contract, reserving for a period of 15 years the oil and gas rights in the lands. In these circumstances there is no implied covenant to develop the premises within a reasonable time (Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 136, 140 Pac. 610), as it is obvious that production and the payment of royalties were not the moving considerations for the making of the contract. This much seems clear, when it is remembered that in the 1912 contract no royalties were to be paid Martin until after the 1st day of January, 1918. Not only does this appear by the terms of the contract, but from the testimony of Martin himself, who states that he was not "to get any of the oil at all absolutely for 5 years." While it is true that the 1912 contract in this respect, as well as in others, was changed by the contract of 1913, it is also true that under the latter contract Martin was to get but 5 per cent. royalties, whereas under the 1912 contract, after January 1, 1918, he was to receive a royalty of 10 per cent. It does not appear that during the time complained of the land was being drained of oil or gas, or that either oil or gas was being developed in the vicinity of such lands; and it is not even contended that the proprietary interest of Martin and his sister was, or was about to be, injuriously affected by the failure of Kroeger promptly to test or drill the lands for oil and gas.

It is shown that Kroeger had made numerous efforts to test and drill the premises, and, in fact, had entered into contracts with different oil operators for that purpose; that on November 18, 1915, Kroeger entered into a contract with one W. R. Ramsey, a responsible operator, to drill the premises, but who declined to proceed with the work when it was discovered that Martin had given a lease to Gant. These efforts we mention as tending to establish Kroeger's good faith, and not as sufficient to discharge a covenant to develop where such covenant exists. The case is controlled not by the rule that an option supported by sufficient consideration, while forming a unilateral agreement, is binding on the parties who execute it, but upon the grounds that Kroeger, by a release of his right to acquire an interest in, and to the premises under his contract of purchase,

reserved the right, for a limited term and upon the performance of certain conditions and the payment of fixed royalties, to the oil and gas privileges belonging thereto. Such a right is the proper subject of sale, and may be granted or reserved. Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 Pac. 468, L. R. A. 1918A, 487; Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86.

Martin the evidence shows to be a man of considerable business experience. At one time he was an auditor or bookkeeper employed by the Oklahoma City Traction Company. He was afterward in the real estate business and a stock salesman for the American Oil & Refinery Company. The contract was made in order to enable Martin and his sister to acquire a merchantable title to the premises, and in the course of which it was necessary to procure a settlement and release of Kroeger's interest under his original contract. If Martin had insisted, it may be that Kroeger would readily have agreed to have had included in the contract a provision requiring the early development of the premises. As this was not done, we cannot assume that it was so intended, and thereby, in effect, alter the terms of the contract. The case being free of any claim of imposition, fraud, or mistake, and the parties having deliberately made the contract as they did, they must abide by it. Miller v. Folsom, 49 Okla. 74, 149 Pac. 1185; Welch v. Ellis, 63 Okla. 158, 163 Pac. 321; Rich v. Doneghey, supra. Obviously the court misapplied the law in reliance upon the recently overruled opinion of this court in Brown v. Wilson. 58 Okla. 392, 160 Pac. 94, L. R. A. 1917B, 1184. The judgment is reversed, and the cause remanded, with instruction to proceed further in accordance with the views herein expressed.

All the Justices concur.