**WITT et al. v. WESTHEIMER et al.**

No. 27308.   April 5, 1938.

Rehearing Denied May 3, 1938.

Application for Leave to File Second Petition for Rehearing Denied May 24, 1938.

Dolman, Dyer & Dolman, Edward H. Chandler, Summers Hardy, and Ralph W. Garrett, for plaintiffs in error.

Earl Appleton Brown, for defendants in error.

RILEY, J. This action was filed July 27, 1935, by Simon Westheimer and F. B. Conrad against J. H. Witt et al., seeking cancellation of certain instruments allegedly constituting a cloud on an oil and gas lease owned by the plaintiffs. Judgment was for plaintiffs, and defendants bring this appeal.

The parties will be referred to as they appeared below.

On November 5, 1915, plaintiffs owned jointly a 170-acre tract of land in Love county, which, on said date, was conveyed to J. H. Witt and wife Matilda. The consideration was $3,400, and included the assumption of a first mortgage in the amount of $1,250. The balance of $2,150 was payable by six notes, the first being due November 5, 1916, and the remaining five, annually thereafter. All were secured by a second mortgage on the land. At the same time a 99-year oil and gas lease was executed by the Witts to the plaintiffs, wherein it was

stated: "This lease is executed as a part of the consideration of a deed of even date herewith covering above-described land." No down payment was made and the Witts went into possession under the deed on January 1, 1916. The debt evidenced by the first mortgage was paid, and the last note to plaintiffs was paid before maturity. All the instruments were properly recorded.

On April 17, 1935, the Witts executed a top lease on their land to one Frank Murta for ten years, which was assigned to the Sinclair Prairie Oil Company on May 9, 1935.

On April 25, 1935, the Witts conveyed to Marshall Strozier an undivided one-half interest in the oil and gas rights of the 170 acres. By subsequent conveyances, defendants E. J. Hendon and W. R. Bowman became owners of undivided interests in the mineral rights conveyed to Strozier.

Plaintiffs pleaded that their lease with the Witts was a part of the consideration for the land and prayed cancellation of the Murta lease and assignment thereof to Sinclair Prairie Oil Company.

Frank Murta disclaimed any interest.

Defendants Bowman and Hendon answered separately and averred they were the owners of 5/170 interest in the mineral rights, subject to some oil and gas lease, but made no allegation concerning the validity of the two leases.

Sinclair Prairie Oil Company and Strozier separately answered and alleged substantially that the oil and gas lease from the Witts to plaintiffs was invalid because it was obtained by fraud and executed without consideration; that lessees had failed to pay rentals thereunder, and comply with the express and implied covenants to drill, and had abandoned the same. These defendants then prayed cancellation of the plaintiffs' lease.

The Witts answered by alleging that they never knowingly executed the lease, and that if they did execute said lease, their signatures were obtained by fraud; that they paid plaintiffs in cash the full value and purchase price for the land; that said lease had been on record for 20 years, during which time the lessees had made no attempt to develop the premises and had made no delay rental payments; and that the lessees had breached the implied covenant to develop, and by their conduct had abandoned and forfeited the lease.

Defendants then prayed cancellation of plaintiffs' lease.

The case was tried to the court, and after making findings of fact and conclusions of law, judgment was rendered for the plaintiffs.

In their first proposition, denominated the Issue of Fraud, the defendants argue that findings of fact 2, 3, and 4 are not supported by the evidence. The above findings are substantially that the lease executed by the Witts, November 5, 1915, to plaintiffs was a part of the consideration for the sale of the land by the plaintiffs to the Witts; that there was no fraud in the execution of the lease or in the transactions leading to its execution; that the lessors executed said lease with full knowledge of its contents and import; and that it was executed in pursuance of the agreement between the plaintiffs and the Witts.

In a purely equitable case, this court will consider the whole record, weigh the evidence, and when the judgment of the trial court is not clearly against the weight of the evidence, the same will be affirmed. Rees v. Egan, 66 Okla. 20, 166 P. 1038. After considering the whole record, we are of the opinion that the above findings are not against the clear weight of the evidence.

Under proposition No. 2, defendants argue that the court committed an error of law in refusing to permit introduction of testimony of plaintiff F. B. Conrad, by which defendants sought to show that the land was deeded to plaintiffs by one Rector in satisfaction of a mortgage in the amount of $1,130 to the First National Bank of Marietta.

Counsel cites no authority in support of this proposition.

Decisive of this is the rule stated in the case of Title Guaranty & Surety Co. v. Slinker, 35 Okla. 128, 128 P. 696:

"Assignments of error * * * unsupported by authority, will not be noticed by the court, unless it is apparent without further research that they are well taken."

Under proposition No. 3, defendants contend that plaintiffs' lease, properly construed, required payment of delay rentals during the 99-year term, and since it is admitted that neither rentals were paid nor development had, the lease is of no force and effect.

The lease was a regular ten-year printed (Prairie) Form 10, with the blanks filled in to conform with the agreement between the parties. The printed term clause provided:

"It is agreed that this lease shall remain in force for a term of ten years from this date, and as long thereafter as oil or gas, or either of them is produced from said land by the party of the second part, their heirs, administrators, executors, successors or assigns."

In the signed lease the word "ten" had been stricken and "ninety-nine" typewritten in place thereof.

The development clause in the printed form was as follows:

"The party of the second part agrees to complete a well on said premises ____ from the date hereof, or pay at the rate of____ Dollars for each additional ____ such completion is delayed from the time above mentioned for the full completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease."

In the lease signed by the parties the words "from the date hereof" and "Dollars" were stricken, and the blanks were filled as indicated by the emphasized words in the following:

"The party of the second part agrees to complete a well on said premises within **the term of this lease,** or pay at the rate of **twenty-five cents per acre per annum** for each additional **year** such completion is delayed from the time above mentioned for the full completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease."

The defendants contend that the following provisions of the lease are inconsistent with a 99-year term without rental or development:

"A. First parties to have fire gas for principal dwelling house.

"B. 'It is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease.'

"C. No well shall be drilled nearer than 200 feet to the house or barn on said premises.

"D. 'All payments which may fall due under this lease may be made directly to lessor or deposited by lessee to his credit in the First National Bank of Marietta, Oklahoma'."

In the case of American Inv. Co. v. Davenport, 151 Okla. 184, 3 P.2d 434, it was said:

"Under the provisions of section 5054, C. O. S. 1921 (9475, O. S. 1931), the written portions of a contract govern over the printed portions, in case of conflict."

Applying the above statutory rule of construction, it seems evident that the parties did not intend to provide for delay rental payments. The defendants do not attempt to point out when the first rental payment became due. Indeed, a complete answer to this contention was provided when the parties struck out the words "from the date hereof" in the very paragraph of the lease where delay rentals were to be provided, and in lieu thereof inserted the words "within the term of this lease."

Defendants' fourth and most serious contention is that, since the lease contains no express covenant to develop in a given time, the law implies a covenant to develop within a reasonable time, and the lease is therefore void because no development was had for a period of 20 years.

This unquestionably is the law in Oklahoma, where the courts have consistently construed oil and gas leases so that development will be encouraged and speculative leaseholding discouraged.

If this lease comes within the above rule, it must fall.

The testimony concerning the execution of this lease is substantially as follows:

Witt was a tenant farmer living in the vicinity of the plaintiffs' land; Westheimer was a merchant and cotton buyer in Marietta, where Conrad was president of the First National Bank.

Westheimer testified he wanted to get Witt on a farm of his own and proposed the sale. After several conversations between the different parties, they met at an abstracter's office, where the mortgage, notes, and oil and gas lease were prepared and signed by all the parties except the wife of one of the plaintiffs, who was out of town.

Westheimer and Conrad testified that the Witts were to assume a $1,250 mortgage, execute five notes for $350 each, and one for $400, secured by a second mortgage on the land and give them a paid-up oil and gas lease for 99 years. Witt had no money for a down payment.

Witt testified he discovered the lease was on record about ten years later, but had never demanded its removal nor charged fraud prior to filing his answer. Testimony tended to prove that the market value of

the farm at the time of the sale was equal to approximately the purchase price, $3,400. Oil and gas leases in the vicinity at that time were practically valueless. Nearest production in 1915, and at the time of the trial, was 15 miles and 12 miles, respectively.

Westheimer and Conrad testified that it was agreed the lease would be a paid up lease for its term and required no rentals for delay.

The above is substantially the evidence pertaining to this question, and the court found that the principal consideration for the execution of the lease was not exploration and development of the premises, but was the execution of the deed to the Witts. The court then concluded as a matter of law that "implied covenants of development are not applicable."

With this above finding and conclusion of law we agree.

In the case of Kroeger v. Martin, 72 Okla. 198, 180 P. 955, a tract of land was purchased by Apple and Franklin. It was later sold to Martin and Knotts, subject to an outstanding contract providing for a 15-year oil and gas lease to Kroeger, and for a deed of a one-half undivided interest to Kroeger when Apple and Franklin had been paid $4,000 from royalties and rents. In order to secure the release of the Kroeger contract an agreement was finally entered into April 4, 1931, whereby Kroeger was granted the oil and gas rights for 15 years and so much longer thereafter as oil and gas were produced. The contract provided for the payment of a 5% royalty on oil produced and $50 per annum for each gas well.

On September 17, 1915, Martin and Knotts executed an oil and gas lease to Walter Gant.

Kroeger filed suit to cancel the said lease.

In its opinion this court said:

"In these circumstances there is no implied covenant to develop the premises within a reasonable time, * * * as it is obvious that production and the payment of royalties were not the moving considerations for the making of the contract."

It is true that in the above case the contract conveyed mineral rights to Kroeger, but royalty payments reserved to the purchasers of the land were similar to those retained by the Witts under the lease in question. But the principle of implied covenants to explore and develop would have applied the same as in an oil and gas lease had exploration and development been the primary purpose of the execution of the contract.

As said in the decision below, "The court is powerless to make a better bargain for the parties than they themselves have chosen to make. * * *"

The above holding also disposes of defendants' 5th assignment, pertaining to the effect of the violation of implied covenants.

Judgment is affirmed.

BAYLESS, V. C. J., and WELCH, GIBSON, and DAVISON, JJ., concur.