## TILLOTSON et al. v. MARTIN et al.

No. 10224—Opinion Filed Aug. 10, 1920.

Corrected and Refiled Aug. 17, 1920.

Rehearing Denied Dec. 14, 1920.

Application to File 2nd Petition for Rehearing Denied Jan. 5, 1921.

(Syllabus by the Court.)

**1. Oil and Gas—Reservation of Mineral Rights in Deed—Construction.**

In the instant case the record discloses without dispute that on November 11, 1915, the defendants M. and M. were the owners of 70 acres of land, 50 acres of which was acquired some time prior to that of the other 20-acre tract, and that the sources of title of said tracts were different; that on said date the 50 acres was encumbered by a valid and subsisting oil and gas lease, under which the said land was being operated for oil and gas, and had three producing wells thereon, but upon said date there was no valid oil and gas lease upon the 20-acre tract; that on said date the defendants conveyed by deed all of the said land to the plaintiff, F., which deed contained the following reservations: "Provided, however, that the parties of the first part hereby reserve for a period of twenty years from the date hereof, or until November 11, 1935, all of the oil and gas rights, rents and royalties, that may be derived from any oil and gas mining lease now in force on any part of said land, also reserving for the period above mentioned all oil and gas in and under said land after the expiration, forfeiture or cancellation of the oil and gas lease or leases now on said land, together with all the rights and privileges necessary for oil and gas operation"—that subsequent to said date, on April 7, 1917, F. executed an oil and gas lease on said 20-acre tract to T. and E., and thereafter, on April 26, 1917, the defendants M. and M. executed an oil and gas lease on said premises to the defendant, M. Mc., who took his lease with knowledge of the lease from plaintiff F. to T. and E. Held, that the reservation in said deed was as to the oil and gas and rights thereto as to the 50 acres only.

**2. Same—Action to Cancel Lease—Reversal.**

Record examined, and held, that the conclusions of law of the trial court were erroneous, and the judgment rendered thereon is reversed and the cause remanded, with directions.

Error from District Court, Nowata County; W. J. Campbell, Judge.

Action by J. A. Tillotson and others against H. M. Martin and others to cancel oil and gas lease and for other relief. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

Ames, Chambers, Lowe & Richardson and Turner & McAdams, for plaintiffs in error.

Chase & Campbell and Adams & Wills, for defendants in error.

JOHNSON, J. On the 26th day of June, 1917, J. A. Tillotson, Thomas E. Elliott, and R. R. Faulkner, as plaintiffs, commenced an action in the district court of Nowata county against H. M. Martin, Myrtle C. Martin, H. H. Makemson, Louis Makemson, and the Prairie Oil and Gas Company, defendants, for cancellation of an oil and gas lease and to quiet title to the oil and gas in and under a certain 20 acres of land described as the N. ½ of the N. E. ¼ of the S. E. ¼ of sec. 20, twp. 26 N. range 16 E.

The plaintiffs filed a second amended petition, and after cross-petition, answer, and reply were filed there was trial to the court and a general judgment for the defendants, to reverse which judgment the plaintiffs commenced this proceeding in error on September 18, 1918, by filing in this court their petition in error with copy of case-made attached.

The assignments of error are:

"(1) Trial court erred in overruling motion for a new trial; (2) in admitting incompetent, irrelevant and immaterial evidence offered by defendants over objection of the plaintiff; (3) in excluding competent, relevant and material evidence offered by the plaintiff; (4) the finding and decree of the court is not sustained by sufficient evidence and is contrary to law; (5) the finding and decree of the court is not sustained by, but is contrary to the law; (6) the finding and decree of the court is contrary to the law and the evidence; (7) the court erred in holding and ruling that the defendants in error Makemson and Martin by their deed executed to R. R. Faulkner on Nov. 11, 1915, reserved the oil and gas rights on the 20 acres of land in controversy; (8) the court erred in rendering its decree in favor of the defendants in error; (9) the court erred in refusing to render judgment in favor of the plaintiffs in error and against the defendants in error."

Since the perfecting of the appeal herein plaintiff in error J. A. Tillotson has died, and the cause, by stipulation of the parties, has been revived in the name of Maud A. Tillotson, as administratrix of his estate.

The essential facts are few and undisputed. The record discloses that on November 11, 1915, H. H. Makemson and wife and H. M. Martin and wife, at that time the owners of the land, for a recited consideration of $1,050, made, executed and delivered to R. R. Faulkner their joint warranty deed conveying to him 70 acres of land, consisting of the 20 acres aforesaid and two other tracts containing 50 acres. That part of the deed pertinent to the questions involved, reads:

"Provided, however, that the parties of the first part hereby reserve for a period of twenty years from the date hereof, or until November 11, 1935, all of the oil and gas rights, rents and royalties, that may be derived from any oil and gas mining lease now in force on any part of said land, also reserving for the period above mentioned all oil and gas in and under said land after the expiration, forfeiture or cancellation of the oil and gas lease or leases now on said land, together with all the rights and privileges necessary for oil and gas operations."

The plaintiff Faulkner, joined by his wife, on April 7, 1917, made, executed, and delivered an oil and gas lease on said 20 acres to the plaintiffs in error, J. A. Tillotson and Thomas E. Elliott, which was duly filed for record April 16, 1917.

The defendants Makemson and Martin, on the 26th day of April, 1917, made, executed, and delivered to the defendant Matt. McCormick an oil and gas lease on said 20 acres, whereupon he entered upon said 20 acres with knowledge of Faulkner's lease to Tillotson and Elliott and over their protest, and commenced a well thereon, and on the date mentioned the plaintiffs, Tillotson, Elliott, and Faulkner, commenced their action against him and the other named defendants as aforesaid.

The uncontroverted evidence discloses that the original allottee of this 20 acres was one Thomas Riley, a duly enrolled citizen of the Cherokee Nation; that the same was a part of his surplus allotment, for which he received certificate in the year 1907 and a patent thereto on December 5, 1910; that on March 27, 1907, he made, executed, and delivered to Jacob L. Haner an oil and gas lease upon the 20 acres in controversy and other lands; that on June 18, 1909, this lease, being subject to the approval of the Secretary of the Interior by the act of July 1, 1902, was forwarded from Muskogee by the U. S. Indian Agent to the Commissioner of Indian-Affairs with the recommendation that it be approved; that on January 31, 1910, the assistant commissioner submitted it to the Secretary of the Interior with the recommendation that it be subject to regulations of April 20, 1908, except as to "30A, in

32-27-16"; that on February 1, 1910, this lease was accordingly approved by the Secretary of the Interior, who, on February 21st, relinquished departmental supervision thereon, and the lease was filed for record in the office of the register of deeds of Nowata county on February 24, 1910. This lease was for "the term of fifteen years from the date hereof" and obligated the lessee "to drill at least one well thereon within twelve months from the date of approval of the bond by the Secretary of the Interior, and should the party of the second part fail, neglect, or refuse to drill at least one well within the time stated, this lease may, in the discretion of the Secretary, be declared null and void after ten days' notice to the parties; provided that the lessee shall have the privilege of delaying operations for a period not exceeding five years from the date of the approval of the bond to be furnished in connection therewith, by paying to the United States Indian Agent, Union Agency, Indian Territory, for the use and benefit of the lessor, in addition to the required annual advanced royalty, the sum of one dollar per acre per annum for each leased tract remaining undeveloped"—which said bond was approved by the secretary at the time he approved the lease.

Haner, the lessee, never took possession of the 20 acres demised under this lease, but paid $1 per acre as delay money for one year only and some $29 advanced royalty.

On February 19, 1909, Thomas Riley, being then of age, made, executed, and delivered a lease on this same 20 acres to Paul Lovell, whereby he leased and let to him and his heirs, successors, and assigns all the oil and gas under said land, with the exclusive right of operating thereon for oil and gas, for five years from the date thereof and as much longer as oil or gas were found in paying quantities thereon; obligating him to drill a well in six months or pay for delay. Riley's restrictions having been removed by the act of May 27, 1908, this lease was filed for record with the register of deeds of Nowata county, February 23, 1909.

On January 31, 1910, Thomas Riley made, executed, and delivered to Paul Lovell a warranty deed, conveying to him the fee to the 20 acres in controversy, which was filed for record with the register of deeds of Nowata county, February 1, 1910, the same day the Secretary of the Interior approved the lease from Riley to Haner. On March 18, 1910, Lovell, by warranty deed, conveyed the 20 acres in controversy to Makemson and Martin, which said deed is the only source of their title and contains the following:

"To have and to hold said described premises unto the said parties of the second part, their heirs and assigns, forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature, except an oil and gas mining lease executed on February 18, 1909, by Thomas Riley to Paul Lovell, and the said grantor Paul Lovell retains the oil and gas mining rights, and agrees to pay the same royalty as provided in said lease."

Thereafter Makemson and Martin conveyed to Faulkner and leased to McCormick, Faulkner leasing to Tillotson and Elliott, as stated. This completes the chain of title.

Counsel for plaintiffs say in their brief:

"That said deed so executed by the said Paul Lovell to the said Makemson and Martin, and containing the provision just quoted was and is the sole source of the defendants' claim of title to and right in said land, and that, even if the purported lease from the said Riley to the said Haner was valid, which the plaintiffs denied, nevertheless, by virtue of the said Makemson and Martin's acceptance of said deed from said Paul Lovell reserving to the said Lovell the oil and gas rights in said land as evidenced by the lease executed by Riley and Lovell on Feb. 19, 1909, and agreeing to pay to said Makemson and Martin the same royalty provided in said lease, and because the defendants claim under said deed, the defendants became and are estopped to assert the existence or validity of the said lease to the said Haner, or to deny that said Paul Lovell at the time of making of the said deed was not in law and in fact the grantee, lessee and owner of all the oil and gas in and under the said land, with the exclusive right of operating thereon. In other words, that the said Makemson and Martin were estopped to deny the very facts whose existence they recognized in acquiring their title; and that by accepting the deed from Lovell, wherein he retained the oil and gas mining rights as evidenced by the lease executed to him by Riley on February 19, 1909, and whereby Lovell agreed to pay Makemson and Martin the same royalty provided in said lease and by claiming under said deed, the said Makemson and Martin were estopped from asserting that any person except Lovell owned the oil and gas in and under said land. The acceptance of said deed from the said Lovell containing that provision was the equivalent of buying the land from the said Lovell and executing to him an oil and gas lease thereon.

"That neither the said Lovell nor any person acting for him ever commenced any well on the lands above described, and neither the said Lovell nor any person in his behalf ever paid to defendants Makemson and Martin, or to any person for them, any of the rentals provided for in said oil and gas mining lease so executed by the said Thomas Riley and to the said Paul Lovell; and because of said

defaults the said lease so executed and the rights so reserved in said deed expired by reason of the terms of said deed on February 19, 1914, five years from the date of said lease, the term of said lease being for five years and as much longer as oil or gas should be found in paying quantities; that the termination of said lease was so declared by the defendants, and that since February 19, 1914, the said Lovell has had no right, title, interest, equity or estate' in or to the said 20 acres in controversy or the oil and gas thereunder.

"That on November 11, 1915, the defendants Makemson and Martin and their wives, for a consideration of $1,050.00 in cash, executed and delivered to the plaintiff Faulkner their warranty deed conveying to the said Faulkner the 20 acres in controversy and also an additional fifty acres of land which said warranty deed contained the provisions supra.

"That at the time of the execution of said conveyance by the said Makemson and Martin to the said Faulkner there were outstanding oil and gas leases in force on the other fifty acres of land conveyed by said deed but there was no outstanding oil and gas lease in force on the 20 acres in controversy."

It was alleged by the plaintiffs in their second amended petition that the purported lease of Thomas Riley to Jacob L. Haner, and the same so shows upon its face, was executed on the 27th day of March, 1907, and the same was not authorized or approved by any order of any court having jurisdiction of the estate of said minor, and that on February 19, 1909, after the said Thomas Riley became of age and before the said Jacob L. Haner had even requested the Secretary of the Interior to approve the said purported lease executed to him, and long before the filing of said lease for record, the said Thomas Riley disaffirmed and repudiated said lease by executing an oil and gas lease covering said land, to Paul Lovell, with the exclusive right to operate thereon for oil and gas for a period of five years from the date thereof, all of which was well known to the defendants herein.

The answer and cross-petition of the defendants Makemson and Martin and their wives denied each and every averment of the second amended petition except such as were thereinafter expressly admitted. They allege:

"That they were the absolute owners of all the oil and gas rights in the land in controversy, subject to the lease executed by them to the said Matt McCormick.

"That the land in controversy was allotted to Thomas Riley, a half-breed Cherokee citizen, as a part of his surplus allotment. That on February 19, 1909, Thomas Riley executed the oil and gas lease mentioned in the plaintiffs' second amended petition to Paul Lovell,

and that the same was filed for record on February 23, 1909.

"That, on March 18, 1910, Paul Lovell by warranty deed conveyed the land in controversy to Makemson and Martin, and that the deed contained the reservation set out in plaintiffs' second amended petition.

"That neither Paul Lovell nor any person in his behalf ever commenced operations for oil and gas on said land; that neither the said Paul Lovell nor any person in his behalf ever paid to the defendants Makemson and Martin, or to any one for them any of the rentals provided for in the said oil and gas lease executed by Thomas Riley to the said Paul Lovell and reserved to the said Lovell in his said deed to Makemson and Martin, for the failure to commence drilling operations on the land in controversy; and that said oil and gas lease and Paul Lovell's rights thereunder expired on March 19, 1914, and was thereafter of no force and effect whatsoever. * * *

"They alleged the execution to R. R. Faulkner on November 11, 1915, of the deed conveying the said land and fifty acres of other land to him, and attached a copy of said deed to the answer; and they alleged that by said deed they reserved and intended to reserve all the oil and gas and all the oil and gas mining rights in said land, and that said deed only operated to convey to the said Faulkner the surface rights to the land in controversy. They alleged that the purported oil and gas lease to Haner and the oil and gas lease executed to Paul Lovell were the only oil and gas leases ever executed upon the land in controversy prior to November 11, 1915. As to the other fifty acres of land conveyed by them in their said deed to Faulkner, they alleged that there were on November 11, 1915, oil and gas leases thereon, and that oil and gas were being purchased from said other fifty acres in paying quantities at said time.

"They admitted the execution of the purported lease to Matt McCormick on April 26, 1917, and attached a copy thereof to their answer.

"They admitted that they had gone upon the premises in controversy and prospected for oil and gas, that they had discovered oil thereon, averred that they had kept a strict account thereof, and that their action had resulted in greatly improving the land in controversy and in enhancing the value thereof.

"They admitted the execution by Faulkner and wife of the lease to Tillotson and Elliott on April 7, 1917, but alleged that the same was absolutely null and void, for the reason that Faulkner never at any time had any right, title or interest in or to the oil or gas under said land.

"They prayed that the plaintiffs take nothing by the action, that a decree be rendered decreeing the defendants to be the owners of

all the oil and gas in and under the land in controversy, subject only to the rights of Matt McCormick under his lease, decreeing that the plaintiffs have no right, title or interest in or to said oil or gas, that the lease from Faulkner to Tillotson and Elliott be canceled, that the right and title of the defendants to the oil and gas be quieted, and that the plaintiffs be enjoined and restrained from asserting any right, title or interest in and to the oil and gas in and under said land."

Jacob L. Haner testified that he never drilled a well upon the 20 acres involved in this controversy, and that he never paid either the rentals or delay money provided for in the lease after February 1, 1912, and that he had not set up any claim to the lease since then.

Both parties specifically pleaded that Paul Lovell never commenced the well on the premises in controversy and that his lease expired by its terms on February 19, 1914, the term being for five years and longer only if oil and gas were found in paying quantities.

It is fully disclosed by the record that neither the Haner nor Lovell lease upon the land involved was valid and subsisting on the 11th day of November, 1915, the date the same was conveyed by Makemson and Martin to Faulkner.

The record further discloses that the lease from Faulkner to Tillotson and Elliott was executed on April 7, 1917, and filed for record April 16, 1917; that the lease from Makemson and Martin to Matt McCormick was dated on April 26, 1917.

The record discloses that the lease upon the 50 acres lying south of the 20 acres involved was from Mary A. Weber to J. D. Walch, F. R. Bridgman, and J. L. Haner, and that oil and gas were being produced from said 50 acres, thereby being three wells upon the same producing from 20 to 30 barrels a day on November 11, 1915, the date of the deed from Makemson and Martin to Faulkner for the entire 70 acres.

J. A. Tillotson, one of the plaintiffs, testified, in substance:

"I am a member of the firm of Tillotson & Elliott. Sometime in April, 1917, after the execution of the lease by Faulkner to Tillotson & Elliott, I had a conversation in my office with Mr. McCormick, one of the defendants in this case, in regard to his taking a lease on the 20 acres in controversy. Mr. McCormick came to my office and stated to me that he was making a deal with Makemson and Martin to lease this 20 acres, and that he saw that we had a lease on it. Our lease had been recorded prior to this conversation. And he wanted to know what

our attitude was in regard to it. I told him that we had a lease on the land; that we claimed the oil and gas rights thereon, and for him not to go on the premises without our consent; that we thought we had a valid lease on it, and that until he had made some arrangements with us he must keep off the lease. We then discussed a compromise or settlement. I told him what we would do in the way of a compromise, and he said he did not know what Mr. Makemson's attitude would be, but he would go and see Makemson and then come back and see me before anything was done, and he said that they would try to make it satisfactory with me. That is the last I saw of Mr. McCormick. The next thing I heard after that conversation was that Mr. McCormick had gone on the premises with a drill rig and was proceeding to operate. I was waiting for him to return and inform me what he had done with Mr. Makemson."

"Cross-examination.

"I told Mr. McCormick not to go on those premises without our consent; that if he did we would bring injunction proceedings against him; that we claimed the lease and it was ours."

The testimony of McCormick was substantially the same.

The decision in this case must rest upon the construction to be placed upon the proviso contained in the deed of November 11, 1915, from Makemson and Martin to Faulkner, which deed conveyed the 20 acres involved herein, upon which we have seen there was at the time no valid and subsisting oil and gas lease. This is conceded by the plaintiffs, and, we think, practically so by the defendants; the latter contending, however, that as to the Haner lease the same was subject to forfeiture and was probably valid because a forfeiture had not been declared at the time of the conveyance aforesaid. In this contention, however, we cannot agree, and we hold that the Haner lease was invalid also.

This conveyance also included 50 acres lying immediately south of the 20 acres involved and upon which there existed an oil and gas lease, and the premises were being operated thereunder and had at the time three producing oil wells thereon.

The first part of the proviso was:

"That the parties of the first part hereby reserve for a period of 20 years from the date hereof, or until Nov. 11, 1935, all of the oil and gas rights, rents and royalties that may be derived from any oil and gas mining lease now in force on any part of said land."

There being no oil and gas lease covering the 20-acre tract herein involved, then there could not have been, from the language used,

any intent that such reservation should apply to the 20-acre tract.

Then follows the last part of the proviso, which is:

"Also reserving, for the period above mentioned, all oil and gas in and under the said land after the expiration, forfeiture or cancellation of the oil and gas lease or leases now in force on said land together with all the rights and privileges necessary for oil and gas operations."

From this language the rights intended to be reserved were based upon the existence of a valid lease on said land, the right to become effective after the expiration, forfeiture, or cancellation of said lease; then it follows that, there being no valid lease then existing upon the land herein involved, there was no reservation intended as to said tract.

The trial court made a general finding in favor of the defendants. The recitations in the journal entry consist of findings of fact, about which there is no dispute, that the several leases and deeds herein involved were executed, filed, and recorded; then conclude that the defendants are the owners of the oil and gas and all the oil and gas rights in and to and under the 20 acres involved, for a period of 20 years from the 11th day of November, 1915, unto November, 1935, as reserved in their deed to Faulkner and by virtue of the same. We find, and so hold, that upon the undisputed facts as disclosed by the record the trial court erred in its conclusion of law, and in the judgment rendered, for which the judgment must be reversed.

The judgment is reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.

RAINEY, C. J., and HARRISON, KANE, and PITCHFORD, JJ., concur.