### DUNLAP et al. v. JACKSON.

No. 11222—Opinion Filed July 17, 1923.

Rehearing Denied Oct. 9, 1923.

**1. Deeds—Reservations—Oil and Gas Royalty.**

E. executed a warranty deed to B. which contained the following reservations: "Party of the first part expressly reserves three-fourths of the royalty of all oil and gas or the proceeds therefrom, which may be produced from the above described premises." Held, that the reservation is valid under the record in this case.

**2. Same.**

J. accepted a deed from B., which described the premises as follows: The southwest quarter of the southeast quarter of section 9, township 18 north. range 11 east, together with an undivided one-fourth interest in and to all the oil and gas rights in and under the southeast quarter of section 9, township 18 north, range 11 east. D. was the owner of the balance of the quarter section and had a three-fourths interest in the oil and gas royalty produced from the land that J. bought. Upon oil being discovered in paying quantities on J.'s land, she contends that she was entitled to all of the royalty from under her "40 acres." Held, that she was bound by the terms of her deed, and that she is entitled to one-fourth of the royalty and D. entitled to the three-fourths under the entire quarter section.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Creek County; Mark L. Bozarth, Judge.

Action by Pearl B. Jackson against James Dunlap and others to enforce oil royalty interests. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

This is an action by Pearl B. Jackson, defendant in error, plaintiff below, against James Dunlap, the Prairie Oil & Gas Company, the Prairie Pipe Line Company, Sinclair Oil & Gas Company, and the Twin State Oil Company, plaintiffs in error and defendants below. The parties will be referred to as they appeared in the court below. The questions before this court for consideration are those shown by the pleadings filed below, including motions and demurrers.

It is alleged in the petition of plaintiff, Pearl B. Jackson, that plaintiff owns and is entitled to the immediate possession of the southwest quarter of the southeast quarter of section 9, township 18 north, range 11 east in Creek county. Okla. (hereinafter referred to in this statement for convenience as the "40 acres.") The said southeast quarter of section 9, township 18 north, range 11 east, will be referred to hereafter as the "quarter section." The answers of the three defendants, the Twin State Oil Company, the Prairie Oil & Gas Company, and the Prairie Pipe Line Company, state

that the plaintiff is the owner of the southwest quarter of the southeast quarter, except three-fourths of the one-eighth oil and gas royalty, which, defendants state, is owned by the defendant James Dunlap; that the said defendant James Dunlap owns three-fourths of the entire "quarter section" (hereinafter referred to as the "120 acres"), being all of said "quarter section," except the said southwest quarter thereof.

The petition alleges that the said "40 acres" was formerly owned by Maggie E. Bruner and Joseph Bruner and W. D. Engles and Maggie J. Engles, and that plaintiff became the owner of same by reason of a deed executed on or about February 21, 1914, by Maggie E. Bruner and Joseph Bruner, her husband. The answers state that the said "quarter section" was the homestead and surplus allotment of one Phillip Jack, a Creek Indian, and that he conveyed the same to Joseph Bruner; that on May 10, 1909, Joseph Bruner conveyed the said "quarter section" to W. D. Engles and Maggie J. Engles, reserving one-fourth of the royalty interest; that on the same date, to wit, May 10, 1909, W. D. Engles and Maggie J. Engles conveyed to Joseph Bruner the said "40 acres," reserving three-fourths of the royalty interest; that on the same date, to wit, May 10, 1909, Joseph Bruner and wife conveyed to W. D. Engles and Maggie J. Engles the said "120 acres," reserving one-fourth of the oil and gas royalty produced therefrom; that on February 21, 1914, Joseph Bruner and his wife, Maggie E. Bruner, conveyed to Pearl B. Jackson the said "40 acres," together with an undivided one-fourth (¼) interest in and to all the oil and gas rights in and to the entire "quarter section."

The petition alleges that on June 7, 1913, the said Joseph Bruner, Maggie E. Bruner, W. D. Engles, and Maggie J. Engles executed and delivered to James R. Pratt an oil and gas mining lease covering the said land, which said lease provided for one-eighth royalty. The answers state that at the time of the execution of the said lease the "40 acres" now owned by plaintiff was owned by Joseph Bruner and W. D. Engles who also owned the "120 acres" now owned by the defendant Dunlap, and that the said lease covered the entire "quarter section," and provided for a one-eighth oil royalty; that prior to the execution of the said lease, conveyance had been executed by and between the Bruners and the Engles, whereby the owners of the "40 acres" became the owners of one-fourth of the one-eighth royalty to be derived from the "120 acres," and the owners of the "120 acres" became the owners of three-fourths of the one-eighth oil royalty to be derived from the "40 acres," and that thereby the defendant Dunlap became, and is now, entitled to three-fourths of the one-eighth oil royalty produced from the "40 acres."

The answer of defendant Twin State Oil Company alleges that by the terms of the lease covering the entire "quarter section," the one-eighth royalty was reserved "unto the lessors," and sets up that it and its co-defendants have at all times been ready, willing, and able to deliver to plaintiff in the pipe line that part of the royalty to which she is entitled by virtue of her right in the royalty interest, as set forth in said answer. The answer of defendant Prairie Pipe Line Company adopts the answers of the Prairie Oil & Gas Company and James Dunlap, and sets up other matters hereinafter noted. The answer of defendant Prairie Oil & Gas Company alleges the joint leasing of the land by the predecessors in title of the plaintiff and of the defendant James Dunlap, and that by such joint lease the royalty was reserved "to the parties of the first part," sets up the fixing by said predecessors in title of their respective royalty interests, and alleges payment to defendant Dunlap of his share of the royalty and tender of her share to the plaintiff. The lease itself is attached to the amended answer of defendant James Dunlap as "Exhibit H." It is entered into by and between W. D. Engles, Maggie J. Engles, Maggie E. Bruner, and Joseph Bruner, "parties of the first part, lessors." and James R. Pratt, party of the second part. In respect to oil royalties, which are the only royalties involved in this action, the party of the second part agrees "to deliver to the credit of the first parties, heirs or assigns, free of cost, in the pipe line to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises."

It should further be noted that the answer of the defendant Prairie Pipe Line Company, after denying all of the allegations of the plaintiff's petition, except such as are admitted, and adopting the answers of defendants James Dunlap and the Prairie Oil & Gas Company, as its own defense, contains the following allegations:

"And further answering, this defendant says that it is a common carrier of crude petroleum oil, and that as such common carrier it received on account of the Prairie Oil and Gas Company the oil purchased from

said land referred to in the plaintiff's amended petition, without any notice of any kind or character of the claims of plaintiff or any dispute as to the title to said oil, re ceiving the usual carrying charges for carrying and delivering the oil and having no further interest of any kind or character therein."

These appear to be all the allegations contained in the petition and answers that are material to this controversy: The said lease was assigned to the Twin State Oil Company by James R. Pratt on the same date that it was executed. The general allegation that plaintiff has owned said "quarter section" since February 21, 1914, is denied generally and specifically. It is alleged and admitted that the Twin State Oil Company explored said land for oil and gas mining purposes, and since April 1, 1915, has been producing oil therefrom; also, the allegation of the petition that at all times since April 1, 1915, the defendants have been appropriating to their own use the one-eighth royalty, and that plaintiff at all times since that date was, and is now, entitled to receive the one-eighth royalty, is met by a statement in the answer denying that defendants, or any of them, have been appropriating to their own use any royalty interest to which plaintiff is entitled, and stating that defendants have at all times been willing to deliver to plaintiff such royalty interest as she is entitled to under the lease and the conveyances to her.

Plaintiff prays judgment for such oil or amount of money as may be found due her from the defendants on an accounting, and the defendants pray that they be dismissed with their costs.

Plaintiff demurred to the separate answer of the Twin State Oil Company, alleging that said answer does not state facts sufficient to constitute a defense to the cause of action in plaintiff's amended petition. Plaintiff, in seeking judgment against the Prairie Oil & Gas Company, a corporation, and the Prairie Pipe Line Company, a corporation, stated that said companies had been taking, receiving, and appropriating to their own use and benefit the equal one-eighth part of all oil produced and saved from the said "40 acres," to which the said defendant companies answered, setting up the same defenses as did the Twin State Oil Company, together with the other allegations to which attention was hereinbefore specifically called; whereupon the plaintiff moved for judgment on the pleadings "upon the grounds that the matters and facts and things set forth and alleged in the answers of the said defendants Prairie Oil & Gas

Company and Prairie Pipe Line Company did not constitute facts sufficient to constitute a defense to the cause of action as alleged in the petition of the said plaintiff," which motion was by the court sustained and judgment entered for plaintiff and against the defendants and each of them, and the said defendants appeal.

It therefore appears that on the face of the exhibit hereinbefore referred to the fee-simple title to the surface of said "40 acres," subject to the ownership of three-fourths of the oil and gas royalty interest by defendant Dunlap, is vested in the plaintiff, Pearl B. Jackson, that the oil and gas lease thereon is owned by the defendant Twin State Oil Company, and that the right and title to three-fourths of the oil and gas royalty interest is vested in the defendant James Dunlap.

The only issue under the pleadings that affects the rights of all of the defendants is whether certain language of the deed dated May 10, 1919, is valid and effective, or without force or effect, when considered together with all the facts and circumstances of the case as shown by the pleadings. The language referred to is that italicized in the following extract from the quitclaim deed from William D. Engles and Maggie J. Engles to Joseph Bruner conveying:

"Subject to the conditions hereinafter set * * * unto Joseph Bruner, the following described real property and premises, situated in Creek county, Okla., to wit: All my right, title and interest, except as hereinafter reserved in and to the southwest quarter (¼) of southeast quarter (¼) of section nine (9), township eighteen (18) north, range eleven (11) east, together with all the improvements thereon and appurtenances thereunto belonging, containing 40 acres, more or less.

"Parties of the first part expressedly reserves three-fourths (¾) of the royalty of all oil or gas, or the proceeds therefrom which may be produced from the above described premises.

"To have and to hold said described premises subject to the foregoing reservation unto the said party of the second part, his heirs and assigns, forever."

To sum up, it appears from the pleadings that on May 10, 1909, Joseph Bruner owned an undivided one-fourth interest in the entire "quarter section," and that William D. Engles and wife owned an undivided three-fourths interest in the "quarter section." Having decided upon a voluntary partition whereby the Engles should take the "120 acres" and Bruners the "40 acres."

it was further agreed as a part of the agreement for a voluntary partition that the conveyances should contain reservations so that on completion of the partition the Engles should own three-fourths of the royalty interest in the entire quarter section and Bruner should own one-fourth of the royalty in the entire quarter section, thus enlarging the chances of each, as they each desired, since it was not then known upon what part of the quarter section, if any, oil or gas might be found in paying quantities.

All parties to this arrangement, namely, Joseph Bruner and wife, and William D. Engles and wife, joined on June 7, 1913, in the execution of an oil and gas lease to James R. Pratt, which lease was later assigned to the Twin State Oil Company. The oil royalty fixed by this lease is one-eighth of all oil produced and saved from the leased premises.

After the execution of this lease to Pratt, to wit, on the 14th day of February, 1914, the Engles conveyed their "120 acres," together with three-fourths of the oil and gas royalties reserved in their arrangements with the Bruners, to the defendant, James Dunlap, who is now the owner of the "120 acres" and claims three-fourths of the oil and gas royalties under the entire "quarter section," in accordance with the arrangements theretofore entered into on May 10, 1909, with the Bruners.

On the 21st day of February, 1914, the Bruners, who were the owners of the "40 acres," conveyed same by warranty deed to the plaintiff, Pearl B. Jackson. The land conveyed by this deed is described as follows, to wit:

"The southwest quarter of the southeast quarter of section 9, township 18, range 11 east, together with an undivided one-fourth in and to all the oil and gas rights in and under the southeast quarter of section 9, township 18, range 11 east."

This deed is the basis of plaintiff's title, under which she is claiming that she is entitled to all of the royalties from the oil and gas produced under the leases aforesaid under her "40 acres." Under this state of the record, the court below sustained a motion of the plaintiff for a judgment on the pleadings in her favor and against the defendants. The sole question for this court to decide is whether the court erred in sustaining said motion and entering judgment on the pleading in favor of the plaintiff, Pearl B. Jackson.

Smith & Walker, for plaintiff in error James Dunlap.

Mason & Hennold, for plaintiffs in error Twin State Oil Company, Prairie Oil & Gas Company, and Prairie Pipe Line Company.

McDougal, Allen & Pryor, for defendant in error.

Opinion by MAXEY, C. This case presents the question of whether or not a reservation in a deed, reserving a certain interest in the oil and gas royalty from the land conveyed, is valid. It is shown by the record that in 1909, W. D. Engles and Maggie J. Engles and Joseph Bruner and Maggie E. Bruner were the owners of the southeast quarter of section nine, township 18, range 11 east. The Engles owning three-fourths of the fee and the Bruners one-fourth; and on May 10, 1909, they entered into a voluntary partition of this quarter section, the Bruners taking the southwest quarter of the southeast quarter, and the Engles the balance of the quarter section, and, for convenience, they are referred to in the record as the "40 acres" and the "120 acres," and the entire tract as the "quarter section". Under this voluntary partition, deed and counter deeds were made by the parties —Bruner deeding his interest in the "120 acres" to Engles and reserving one-fourth interest in the oil and gas royalties, and Engles deeding his interest in the "40 acres" to Bruner and reserving three-fourths of the oil and gas royalty. There was no oil and gas being produced on the land at that time, but it was in that part of Creek county that was being developed for oil and gas and it had an oil and gas value even at that time.

On June 7, 1913, the Engles and Bruners joined in a lease to the "quarter section" for oil and gas purposes to James R. Pratt. Under said lease the lessors were to receive one-eighth of all oil and gas taken from said land, to be divided in the proportion of one-fourth to the Bruners and three-fourths to the Engles. On February 14, 1914, the Engles conveyed the fee in "120 acres" to the defendant James Dunlap, together with their reservation of three-fourths of the oil and gas royalty in the entire quarter section. On the 21st day of February, 1914, Bruner conveyed the fee in the "40 acres" to the plaintiff, Pearl B. Jackson, together with a one-fourth interest in the oil and gas royalty in the entire quarter section. So it will be seen that if the reservations in these deeds are valid, the plaintiff, Pearl B. Jackson, is entitled to one-fourth of the oil and gas royalty from the entire quarter section, and the defendant James Dunlap is entitled to three-fourths of the oil and gas royalty in the entire

quarter section. Sometime after, to wit, about the first of April, 1915, the Twin State Oil Company, the assignee of James R. Pratt, commenced exploring said land for oil and gas and brought in a well on the '40 acres" about the 1st of April, 1915, and it has been producing oil ever since. Other wells have been drilled on the "40 acres" and are all producing oil, but at the time of the commencement of this suit, the other part of the quarter section, or that part owned by Dunlap, had not been explored. After the oil began to be produced, the Twin State Oil Company, which was owner of the lease and operating the production on said land, began paying three-fourths of the royalty to Dunlap and tendered one-fourth to the plaintiff, Pearl B. Jackson, who refused to accept one-fourth, but contended that she was entitled to all of the oil and gas royalty from the '40 acres", and soon after oil was commenced to be produced she brought this suit. After the issues were made up by the amended petition of Pearl B. Jackson, and the answer of the several defendants, the attorneys for Pearl B. Jackson, the plaintiff, filed a motion for judgment on the pleadings, which went to the question that taking all of the matters and facts set forth and alleged in the answers of the several defendants, they did not state facts sufficient to constitute a defense to the cause of action, as alleged in the petition of said plaintiff, which motion was sustained by the court and judgment entered for plaintiff and against the defendants and each of the defendants has appealed from said judgment to this court.

It appears on the face of the record and an examination of the facts and deeds referred to, that the fee-simple title of the surface of the "40 acres" subject to the ownership of three-fourths of the oil and gas royalty reserved to Dunlap is vested in the plaintiff, Pearl B. Jackson. That, at least, is the contention of the defendants, and the only issue under the pleadings that affects the rights of all of the defendants is whether certain language of the deed dated May 10, 1909, is valid and effective, or without force or effect. The language referred to is that emphasized in the following extract:

"Subject to the conditions hereinafter set * * * unto Joseph Bruner, the following described real property and premises, situated in Creek county, Okla., to wit: All my right, title and interest, except as hereinafter reserved, in and to the southwest quarter (¼) of southeast quarter (¼) of section nine (9), township eighteen (18) north, range eleven (11) east, together with all the improvements thereon and appurtenances thereunto belonging, containing 40 acres, more or less.

"Parties of the first part expressly reserves three-fourths (¾) of the royalty of all oil or gas or the proceeds therefrom which may be produced from the above described premises.

"To have and to hold said described premises subject to the foregoing reservation unto the said party of the second part, his heirs and assigns forever".

The parties having decided upon a voluntary partition whereby the Engles should take the "120 acres" and the Bruners the "40 acres", it was further agreed as a part of the voluntary partition, that the conveyance should contain said reservations, so that on completion of the partition, the Engles should own three-fourths of the royalty interest in the entire quarter section and the Bruners should own one-fourth of the royalty interest in the entire quarter section, thus enlarging the chances of each, as they each desired, since it was not then known upon what part of the quarter section, if any, oil or gas might be found in paying quantities.

Was this partition and agreement with reference to the oil and gas royalty, as embodied in these deeds, a valid transaction, and do the reservations in the deeds convey the oil and gas royalty as fixed by the partition, and is this arrangement entered into between the Engles and Bruners binding on Dunlap and Pearl B. Jackson? If so, that is an end to this lawsuit and Dunlap is entitled to three-fourths of the royalty and Pearl B. Jackson to one-fourth

We will now examine the authorities cited by the respective parties and try to determine that question. In the case of Stone v. Stone (Iowa) 119 N. W. 712, it is said:

"A reservation is never of a part of the estate itself, but is something taken back out of that already granted, as rent, or right to cut timber, or to do something in relation to the estate".

The Supreme Court of West Virginia has held that the royalty interest in oil and gas leases may properly be made the subject of a conveyance or reservation. Harris v. Cobb (W. Va.) 38 S. E. 559; Snodgrass v. Koen (W. Va.) 96 S. E. 606; Updegraff v. Blue Creek Coal & Land Co. (W. Va.) 81 S. E. 1050; Toothman v. Courtney (W. Va.) 58 S. E. 915.

This court has repeatedly held that the right to go upon land for the purpose of

prospecting and taking therefrom oil and gas is a proper subject of sale and may be granted or reserved. Ramey v. Stephney, 70 Oklahoma, 173 Pac. 72; Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 Pac. 468.

In the last case the court said:

"Under the weight of authority the right to go upon the land for the purpose of prospecting and taking therefrom the oil and gas is a proper subject of sale and may be granted or reserved. The title to the oil and gas becomes perfect when discovered and reduced to actual possession. The real subject of the exception and reservation in the deed here was the right to enter upon the land for the purpose of taking possession of the oil by mining and boring for the same."

And in Rich v. Doneghey, 71 Oklahoma, 177 Pac. 86, the court said:

"But with respect to such oil and gas, they had certain rights designated by the same courts as a qualified ownership thereof, but which may be more accurately stated as exclusive right, subject to legislative control against waste and the like, to erect structures on the surface of their land, and explore therefor by drilling wells through the underlying strata, and to take therefrom and reduce to possession, and thus acquire absolute title as personal property to such as might be found and obtained thereby. This right is the proper subject of sale, and may be granted or reserved. * * * The right so granted or reserved. and held separate and apart from the possession of the land itself, is an incorporeal hereditament; or more specifically, as designated in the ancient French, a profit a prendre, analogous to a profit to hunt and fish on the land of another."

And in Kroeger v. Martin. 75 Okla. 9, 180 Pac. 955, quoting from the syllabus, it is said:

"One who holds an enforceable contract for an oil and gas lease and for an interest in land may contract in respect thereto and may, in effecting a settlement of such right, enter into a contract with the grantees of those with whom he formerly contracted, reserving to himself the oil and gas beneath the lands conveyed."

Also, in Tillotson v. Martin. 80 Okla. 156, 193 Pac. 975, it is said:

" * * * All of the oil and gas rights, rents and royalties, that may be derived from any oil and gas mining lease now in force on any part of said land, also reserving for the period above mentioned all oil and gas in and under said land after the expiration, forfeiture or cancellation of the oil and gas lease or leases now on said land, together with all the rights and privileges necessary for oil and gas operations."

In this case part of the land conveyed was incumbered by a valid oil and gas lease under which operations were being carried on at the date of the conveyance. The remainder of the land had no valid oil and gas lease upon it at the date of the conveyance. The title of the grantor to the two tracts was derived from different sources. The court held that the above reservation did not apply to that part of the land conveyed upon which there was no valid lease at the date of the conveyance. In the opinion the court said:

"The decision in this case must rest upon the construction to be placed upon the proviso contained in the deed of November 11, 1915, from Makemson and Martin to Faulkner, which deed conveyed the 20 acres involved herein upon which we have seen there was at the time no valid and subsisting oil and gas lease. * * *

"That the parties of the first part hereby reserve for a period of 20 years from the date hereof, or until November 11, 1935, all of the oil and gas rights, rents and royalties that may be derived from any oil and gas mining lease now in force on any part of said land.

"There being no oil and gas lease covering the 20-acre tract herein involved, then there could not have been, from the language used, any intent that such reservation could apply to the 20-acre tract."

Then follows the last part of the proviso, which is:

"Also reserving, for the period above mentioned, all oil and gas in and under the said land after the expiration, forfeiture or cancellation of the oil and gas lease or leases now in force on said land, together with all the rights and privileges necessary for oil and gas operations.

"From this language the rights intended to be reserved were based upon the existence of a valid lease on said land; the right to become effective after the expiration, forfeiture, or cancellation of said lease. Then it follows that, there being no valid lease then existing upon the land herein involved, there was no reservation intended as to said tract."

There does not seem to be any question raised as to the validity of the reservation of the royalty interest as against the grantee in the deed, and that the court rests its decision upon the question of whether the reservation, by its terms, applies to the tract in controversy. It would seem that, in view of the prior decisions in Ramey v. Stephney, Barker v. Campbell-Ratcliff Land Co., Rich v. Doneghey, and

Kroeger v. Martin, supra, this court recognizes the principle that the grantor of land may properly retain for himself, by reservation in his deed, the oil and gas royalty interest, or any part thereof, in the land conveyed.

There is much said in the decisions from the different oil producing states about reservations of the kind that is in the deed involved in this case, and there is much unanimity in the decisions. Some of the decisions use the words royalty and rent interchangeably. The case of Paxton v. Benedum-Trees Oil Co. (W. Va.) 94 S. E. 472, was where the plaintiff joined with another or other parties in a deed which conveyed an interest in the oil and gas in several tracts of land, the granting clause in the deed reading, in part:

" * * * Parties of the first part do grant and convey unto the parties of the second part of the one-sixteenth of all oil and one-half' of all of the gas within and underlying the several and respective tracts of land hereinafter described, including in this conveyance the one-half of all the royalties, incomes and rentals which may hereafter arise therefrom or accrue upon the real estate hereinafter described by virtue of any oil and gas lease or leases now on said several tracts of land or which may hereinafter be placed on said several tracts of land, of any of them. * * *"

This deed was executed on March 18, 1904, while the lease fixing the royalties to be paid under which the grantee in the deed granted a royalty interest was not executed until September 30, 1909. The first well was completed in the spring of 1910, and produced oil in paying quantities. Other wells were subsequently drilled, until at the time of trial in January, 1916, there had been five wells completed, all of which produced oil in paying quantities. After the operating company began to produce oil, a dispute arose as to the amount of oil, that should be delivered to the grantee in the deed and his assigns under the deed dated March 18, 1904. The court held that the grantee in the deed was held to be the owner of a portion of the royalty payable under the lease executed more than five days later. This case is in many respects similar to the case at bar. The deeds between the Engles and the Bruners of May 10, 1909, contain these reservations, and the deed from the Engles to Dunlap, and Bruner to the plaintiff, Pearl B. Jackson, contain these reservations, all before any oil was produced. In fact, no oil was produced until April, 1915. So that the time between the first deeds with reservations and the production of oil is about the same as in the Paxton case just cited. Another case is Jackson v. Dulaney (W. Va.) 67 S. E. 795. It is a somewhat similar case and the court recognizes the validity of the reservations. In the case of Saulsberry v. Saulsberry (Ky.) 172 S. W. 932, the reservation was one-half of all rents from off the place and was held to include one-half of the royalty received from coal and clay mines on the land, although the word royalty was not mentioned in the reservations. In the case of Toothman v. Courtney (W. Va.) 58 S. E. 915, the reservation was of the rental, without specifying the amount, but was held to reserve to the grantor whatever royalty he might be able to get from a lease of the land for oil purposes. The court said:

" * * * A rental issuing out of the land is not the land itself, nor is it any part of the land. Rents and profits are the mere usufruct of the land. There may be an estate in them, an unlimited right of enjoyment; but it is an incorporeal hereditament. A reservation in a deed or lease of a rent for a term of years is none the less an intangible incorporeal right. In the deed to Wilson, Toothman reserved no land, no oil, no gas, by name, but only the oil rental, which means the royalty. He reserved all the oil rental, thereby retaining in himself the beneficial use of all the oil in the land less what he had conveyed to McDermott. * * *"

Compare the case just cited with this case, and it will be seen that the court went much further in the Toothman case than it is necessary to go in this case. In this case the reservation is of the "one-fourth part of the royalty of all oil or gas or the proceeds therefrom which may be produced from the above-described premises". The same reservation is in the deed from the Engles to Bruner except the Engles reserve three-fourths of the royalty, thereby fixing the amount of royalty each was to receive absolutely. This same proposition of the royalty was transmitted to Dunlap and Pearl B. Jackson. Nothing could be clearer. When you examine the Engles and Bruner deeds, and the deeds from the Engles to Dunlap, and from the Bruners to Pearl B. Jackson, they both knew of the reservations in the deeds between the Engles and Bruners because they were a matter of record and they accepted their deeds subject to these reservations and are bound thereby.

To the same effect are the following cases: Stone v. Stone, supra; Youngerman v. Polk County Sup'rs, 110 Ia. 731, 81 N. W.

166; Stephens v. Reynolds, 6 N. Y. 454; Parsell v. Stryker, 41 N. Y. 480; Wegner v. Lubenow (N. D.) 95 N. W. 442; In re Narragansett Indians, 20 R. I. 715, 40 Atl. 347; Cutler v. Tufts, 3 Pick. (Mass.) 272; Meyer v. Russell, 124 Mo. App. 317, 101 S. W. 606.

It is argued by counsel for defendant in error that the reservations in the deed involved in this case are an attempted sale of the oil and gas in place. We cannot agree to this proposition.

In the case of Horner v. Philadelphia Co. (W. Va.) 76 S. E. 662, it was held that a deed granting one-half of the royalty in all the oil and gas within the tract of land was valid. It is held a similar reservation to the deeds involved here is not a conveyance of the oil and gas in place, but passes the right to have delivered in the pipe line by the lessee, the oil and gas as provided in the reservations. Other cases to this effect are Curlee v. Anderson & Patterson (Tex. Civ. App.) 235 S. W. 622; Kissick v. Bolton (Iowa) 112 N. W. 95. In the case of Northcutt v. Church, 188 S. W. 220, the Supreme Court of Tennessee states the rule as follows:

"The grantor of minerals, by implication of law, conveys the right to obtain access to them through the surface and against such purposes does not hold the surface."

To the same effect are Marvin v. Brewster Iron Min. Co. (N. Y.) 14 Am. Rep. 322; Horner v. Watson (Pa. St.) 21 Am. Rep. 55.

Under the deed of Dunlap from the Engles, he took the land with the same reservation that Engles took it, and in the deed from Bruner to Pearl B. Jackson, she took her deed with the same reservation that was in the deed from Bruner to Engles; and the question arises whether or not, under the facts in this case, Dunlap and Pearl B. Jackson are not estopped from questioning the validity in their respective deeds. Are they not by the plain recitals in their deeds estopped from making the claim that Pearl B. Jackson, the plaintiff, is now making in this case? She did not plead her deed, and the defendants could not avail themselves of estoppel by demurrer, but had to allege it in their answer; and it is in the record as exhibits to Dunlap's answer. It is questioned by counsel for plaintiff whether defendants could raise the estoppel in this way. In 10 R. C. L. Par. 14, page 843, the rule is stated as follows:

"It would seem, as an estoppel by deed is apparent on the face of the title, it may be given in evidence without being pleaded."

We think that it makes very little difference how the deed gets into the record; that, on a motion for judgment on the pleadings, the deed and its reservations are in evidence and admitted by the plaintiff.

Counsel for defendant in error argue strenuously that oil and gas are not the subject of grant or reservation separate and distinct from the soil, and cite in support of this proposition Frank Oil Company v. Belleview Gas & Oil Company, 29 Okla. 719, 119 Pac. 260, Kalachny v. Galbreath, 26 Okla. 782, 110 Pac. 902, and Ohio Oil Company v. State of Indiana, 177 U. S. 190, 44 L. Ed. 729. We have read the case of Ohio Oil Company v. State of Indiana, just cited, and quote the following from that decision:

"Although in virtue of his proprietorship the owner of the surface may bore wells for the purpose of extracting natural gas and oil until these substances are actually reduced by him to possession, he has no title whatever to them as owner. That is, he has the exclusive right on his own land to seek to acquire them, but they do not become his property until the effort has resulted in dominion and control by actual possession. It is also clear from the Indiana cases cited that, in the absence of regulation by law, every owner of the surface within a gas field may prosecute his efforts and may reduce to possession all or every part, if possible, of the deposits, without violating the rights of the other surface owners.

"If the analogy between animals ferae naturae and mineral deposits of oil and gas, stated by the Pennsylvania court and adopted by the Indiana court, instead of simply establishing a similarity of relation, proved the identity of the two things there would be an end to the case. This follows because things which are ferae naturae belong to the 'negative community', in other words, are public things subject to the absolute control of the state, which, although it allows them to be reduced to possession, may at its will not only regulate, but wholly forbid, their future taking. Geer v. Connecticut, 161 U. S. 519, 525, 40 L. Ed. 793, 795, 16 Sup. Ct. Rep. 600. But whilst there is an analogy between animals ferae naturae and the moving deposits of oil and natural gas there is no identity between them. Thus, the owner of land has the exclusive right on his property to reduce the game there found to possession, just as the owner of the soil has the exclusive right to reduce to possession the deposits of natural gas and oil found beneath the surface of his land. The owner of the soil cannot follow game when it passes from his property; so, also, the owner may not follow the natural gas when it shifts from beneath his own property to the property of someone else within the gas field. It being true as to both animals

ferae naturae and gas and oil, therefore, that whilst the right to appropriate and become the owner exists, proprietorship does not take being until the particular subjects of the right become property by being reduced to actual possession."

Under the allegations that the owner of land has no title to the oil and gas that might be beneath the surface as such, counsel for defendant in error cite the following cases: Lindley v. Roydure, 239 Fed. 928; Wattford Oil & Gas Co. v. Shipman (Ill.) 84 N. E. 53; State v. Ohio Co., 150 Ind. 21, 49 N. E. 809; Dark v. Johnson, 55 Pa. St. 164, 94 Am. Dec. 732; Bender v. Brooks, 103 Tex. 329, 127 S. W. 168; Superior Oil Co. v. Mohlin, 25 Okla. 899, 108 Pac. 545; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 514; Priddy v. Thompson, 204 Fed. 995.

The last case cited being a case that arose in Oklahoma, counsel quotes the following:

"Oil and gas in the earth are, unlike ore and coal, fugacious and incapable of ownership distinct from the land, and a grant of the oil and gas in a tract of land is a grant of that part of the oil and gas therein which the grantee may find and capture. No title vests until the oil or gas is reduced to possession by extracting the same from the earth, and hence the lease is a grant of an incorporeal hereditament."

We will say that we have examined all of the authorities cited by both set of counsel for plaintiff in error, and also the authorities cited by defendant in error, and have cited such of said authorities in this opinion as we think applicable to the case under consideration. Counsel for all parties have ably briefed the case and have been of great assistance to the court in arriving at a decision, and after a patient review of the authorities and an examination of the record, and of the reservation in the various deeds, we have reached the conclusion that the reservations made in the deeds from the Engles to the Bruners, and from the Bruners to the Engles, and which were perpetuated and carried into the deed from the Engles to Dunlap and from the Bruners to the plaintiff, Pearl B. Jackson, under the authorities herein cited, are valid reservations, and that upon the discovery and production of oil on the quarter secton involved, the defendant Dunlap, and plaintiff, Pearl B. Jackson, are entitled to take the royalty from the production of oil and gas from said quarter section in the proportion as provided in the reservations in their respective deeds. Having reached this conclusion we hold that the court below erred in entering judgment on the pleadings in favor of the plaintiff, Pearl B. Jackson, for the entire royalty from the "40 acres" owned by her, and for that error the case is reversed and remanded to the trial court, with directions to set aside the judgment and proceed with this case according to the views herein expressed.

By the Court: It is so ordered.